UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
DAVID MATIAS LOPEZ, MYNOR ISMAEL TOMAS PEREZ, NOE ARNOLDO LOPEZ MIRANDA, CAMELIO JEREMIAS MATIAS LOPEZ, ELMAR ALEJANDRO MATIAS LOPEZ, and MELVIN JOSIEAS TEMA TEMA, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

INTERNATIONAL DRYWALL, INC. and JUAN DIAZ LEMUS, as an individual,

Defendants.

---------------------------------------------------------- X

**REPORT & RECOMMENDATION**

22-CV-7026 (LDH)(SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

Plaintiffs David Matias Lopez, Mynor Ismael Tomas Perez, Noe Arnoldo Lopez Miranda, Camelio Jeremias Matias Lopez, Elmar Alejandro Matias Lopez, and Melvin Josieas Tema Tema (collectively, "Plaintiffs"), assert wage and hour claims against their former employer International Drywall, Inc. ("International Drywall") and owner Juan Diaz Lemus ("Lemus") (collectively, "Defendants"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and New York Labor Law ("NYLL") § 650. Presently before the undersigned, on referral from the Honorable LaShann DeArcy Hall, United States District Judge, is Plaintiffs' Motion for Default Judgment. For the reasons set forth below, the undersigned respectfully recommends Plaintiffs' motion be granted as to Plaintiffs' wage and hour claims and denied as to Plaintiffs' written notice and wage statement violation claims, with damages awarded as detailed below.

## BACKGROUND

The following facts are taken from the Complaint, and the affidavits and exhibits filed in

support of Plaintiffs' motion. The facts are assumed to be true for the purpose of this Report and Recommendation. *See, e.g.*, *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015).

## I. Factual Background

Plaintiffs are six New York residents and former employees of International Drywall. Complaint ("Compl."), Dkt. No. 1, ¶¶ 8–13. According to their affidavits, Plaintiffs performed work as drywall and sheetrock installers for Defendants at multiple New York City locations,[1] from December 14, 2021, until January 6, 2022. Affidavit in Support Motion for Default Judgment ("Support Aff."), Dkt. No. 48, Exs. 10–15 ¶¶ 3, 17.

Per the Complaint, Defendant Lemus is the owner and operator of Defendant International Drywall, a domestic corporation registered and authorized to do business in New York state. Compl. ¶¶ 2, 16–17. Plaintiffs also allege that throughout their employment with Defendants, Lemus oversaw all payroll and personnel decisions, including hiring and firing. *Id.* ¶¶ 16–22. Further, they allege that Lemus was responsible for determining, establishing, and paying Plaintiffs their wages, as well as setting their work schedules and maintaining the business' records. Support Aff., Exs. 10–15, ¶ 4. Plaintiffs additionally allege that International Drywall purchased goods and supplies, required employees to "handle, sell, or otherwise work with" goods intended for or produced through interstate commerce, and "had annual gross volume of sales of not less than $500,000.00." Compl. ¶ 25; Support Aff., Exs. 10–15 ¶¶ 6–7.

Plaintiffs regularly worked six days per week during their employment, with shifts each workday from approximately 7:00 a.m. to 3:30 p.m. Compl. ¶¶ 27–28. As such, Plaintiffs were

[1] Job sites were located at 144-04 226 St., Springfield Gardens, Queens, NY 11413; 1401 60th St., Brooklyn, NY 11219; and Hoyt Street, Brooklyn, NY 1121. Compl. ¶ 2.

regularly required to work approximately 51 hours or more each week. *See id.* ¶ 29. Plaintiffs allege they were paid by Defendants a flat daily rate of either $180.00 or $200.00 per day, without regard to the number of hours worked, throughout their employment. *See id.* ¶ 30; Support Aff., Exs. 10–15 ¶ 11. Plaintiffs allege they were not provided with any paystubs or other documentation as to their rate of pay at any time during their employment and were paid by Lemus in cash. Support Aff., Exs. 10–15 ¶¶ 11, 13, 14.

## II. Procedural Background

Plaintiffs filed the Complaint on November 17, 2022,[2] alleging that Defendants failed to pay them overtime wages at a rate of "time and a half" for hours worked in excess of 40 hours per week, and failed to provide Plaintiffs with documentation regarding their rate of pay. Compl. ¶¶ 62, 83, 88, 91, 94; Support Aff., Exs. 10–15 ¶¶ 11, 16.[3]

Defendants International Drywall and Lemus were served on December 6, 2022, and December 10, 2022, respectively. Dkt. Nos. 9–10. Both Defendants failed to appear. On January 9, 2022, Plaintiffs requested a Certificate of Default, which the Clerk of Court entered on January 12, 2022. Dkt. Nos. 11–12. The Honorable Vera M. Scanlon, the then-assigned Magistrate Judge,

---

[2] The FLSA's statute of limitations is two years for typical FLSA violations and three years for willful violations. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (citing 29 U.S.C. § 255(a)). The NYLL has a six-year statute of limitations. *See* N.Y.L.L. §§ 198(3), 663(3). As Plaintiffs' claims relate to their work for Defendants from December 14, 2021 to January 6, 2022, all of their claims are timely under any of these statutes of limitations.

[3] Plaintiffs originally filed this lawsuit as a class action. Compl. ¶ 67. However, the Motion for Default Judgment was made only as to the named Plaintiffs and, thus, the issue of a putative class has been waived. *See* Plaintiffs' Memorandum of Law, Dkt. No. 49; *see also Jimenez v. Green Olive Inc*., 744 F. Supp. 3d 221, 251 (E.D.N.Y. 2024) (considering the plaintiff's collective action certification request waived as the plaintiff did not reiterate the class action certification request in their motion for default judgment) (collecting cases). Further, "where the plaintiff seeks to certify a FLSA collective action and the defendant defaults or in similar situations, other courts in this Circuit have entered default judgments in favor of only the named plaintiffs and have left the defendants the opportunity to defend themselves against claims by future plaintiffs." *Jimenez*, 744 F. Supp. 3d at 252. Therefore, this Report and Recommendation applies solely to the named plaintiffs.

scheduled a default conference for June 23, 2023. In the order scheduling that conference, Judge Scanlon warned Defendants that they risked waiving their factual and legal defenses if they failed to appear. Scheduling Order dated May 18, 2023. The default conference was cancelled on consent of the parties after counsel for Defendant Lemus filed a notice of appearance on May 23, 2023. Dkt. Nos. 14–15; Order dated June 6, 2023. Lemus filed his Answer on June 9, 2023. The Court then vacated the entry of default. Dkt. No. 17; Order dated June 21, 2023. Defendant International Drywall, on the other hand, never appeared in this action.

Following Lemus' appearance, the parties attempted to resolve this matter through court-annexed mediation. Order dated Aug. 25, 2023. Mediation proved unsuccessful and the parties resumed discovery. Report of Mediation Unsettled dated Jan. 4, 2024. On March 15, 2024, Plaintiffs advised the Court that Lemus had not responded to document requests or interrogatories, and Lemus' counsel reported that "Defendant [Lemus] is not cooperating with counsel's requests and has not kept appointments[.]" Dkt. No. 27. On November 6, 2024, Lemus' counsel filed a motion to be relieved as counsel, informing the Court that Lemus continued to avoid discovery obligations and frequently missed scheduled meetings. Dkt. No. 29. On November 20, 2024, the Court granted the motion and permitted Lemus to appear *pro se*. Dkt. No. 30.

Now proceeding *pro se*, Lemus failed to appear for status conferences on December 17, 2024, and January 7, 2025, while continuing to ignore Plaintiffs' discovery requests. Order dated Dec. 18, 2024, Order dated Jan. 7, 2025. In separate orders on December 18, 2024, and January 2, 2025, the Court warned Defendants that continued failure to participate in this case could result in Plaintiffs making a motion to strike and the Court striking Lemus' Answer. *See* Order dated Dec. 18, 2024; Order dated Jan. 2, 2025. On February 20, 2025, Plaintiffs filed a motion to strike Lemus' Answer. Dkt. No. 35. The undersigned scheduled an oral argument on the motion to

strike, and issued two more orders warning Defendants that a continued failure to participate in this case could result in the Court granting Plaintiffs' motion. Order dated Aug. 18, 2025; Order dated Sep. 12, 2025.

Lemus failed to appear for the September 17, 2025 oral argument, despite being warned of the consequences for failing to appear. Minute Entry dated Sep. 18, 2025; Order dated Sep. 18, 2025. The following day, the Court granted the motion to strike Defendant Lemus' Answer, noting that Lemus' failure to appear at the oral argument was part of a "pattern of non-participation in this case" and finding Lemus' failure to participate, despite numerous warnings from the Court, to be willful. *Id.*

After the Court granted the motion to strike, Plaintiffs renewed their request for a Certificate of Default. Dkt. No. 40. The Clerk of Court entered the Certificate of Default on October 2, 2025. Dkt. No. 42. On November 13, 2025, Plaintiffs filed this motion for default judgment. Motion for Default Judgment ("Mot."), Dkt. No. 47.

Plaintiffs seek a default judgment on their claims pursuant to the FLSA and NYLL for unpaid overtime wages and failure to provide wage notices and wage statements. Compl. ¶¶ 83, 88. Plaintiffs also seek liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs. Plaintiffs' Memorandum of Law in Support of Motion for Default Judgment ("Pls.' Mem."), Dkt. No. 49.

## LEGAL STANDARD

A court possesses "sound discretion" to grant or deny a motion for default judgment. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); *accord Klideris v. Trattoria El Greco*, 10-CV-4288, 2011 WL 7114003, at *2 (E.D.N.Y. Sep. 23, 2011), *report and recommendation adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012). Since a "default is an admission of all well-

pleaded allegations against the defaulting party," upon considering the motion, "a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014) (internal quotations and citations omitted); *accord Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

A party's motion for default judgment "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013). Therefore, the Court must ensure that "[P]laintiff's allegations, [when accepted as true], establish the defendant's liability as a matter of law." *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 137 (2d Cir. 2011). Default judgments are "generally disfavored" because the Second Circuit has an "oft-stated preference for resolving disputes on the merits." *Enron*, 10 F.3d at 95. Accordingly, when considering a default judgment motion, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). A court may rely on "evidence presented at an inquest, detailed affidavits, or documentary evidence" in its assessment of the motion. *1199 SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council, Inc.*, 13-CV-2768, 2013 WL 6003731, at *4 (S.D.N.Y. Nov. 13, 2013), *report and recommendation adopted,* 2013 WL 6244716 (S.D.N.Y. Dec. 3, 2013).

## DISCUSSION

### I. Propriety of a Default Judgment

The undersigned first addresses whether a default judgment is appropriate, given that

Lemus initially appeared and participated in this case for some time.[4] "Rule 37 allows the Court to impose sanctions on a party that fails to Comply [sic] with discovery orders" including "striking pleadings or entering a default judgment." *Elsevier Inc. v. Memon*, 97 F. Supp. 3d 21, 38 (E.D.N.Y. 2015); *see also* Fed. R. Civ. P. 37(b)(2). Rule 55(a) also allows the Court to enter default judgment against a defendant who fails to "plead or otherwise defend" an action. *Elsevier*, 97 F. Supp. 3d at 38 (quoting Fed. R. Civ. P. 55(a)).

In instances such as these, where the defendants initially appeared but have failed to comply with court orders or otherwise defend themselves, Courts weigh the following factors to determine if the entry of a default judgment is appropriate: "(a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party." *Elsevier*, 97 F. Supp. 3d at 38 (citing *Am. Cash Card Corp. v. AT & T Corp.*, 184 F.R.D. 521, 524 (S.D.N.Y. 1999)). The undersigned addresses each of these factors in turn.

**A. History of Noncompliance**

Defendants have a history of noncompliance. Defendants failed to file an Answer to the Complaint by the December 31, 2022 deadline. This ultimately resulted in an entry of default on January 12, 2022. *See* Dkt. Nos. 11–12. On May 23, 2023, Lemus appeared via counsel, filed an Answer, and took part in a mediation on December 4, 2023. Dkt. Nos. 14–17, 25. However, after mediation proved unsuccessful, Lemus began to ignore his discovery obligations and failed to communicate with Plaintiffs or his own counsel, prompting defense counsel to move to withdraw.

[4] Plaintiffs certified that Defendant Lemus is not in military service, a minor, or incompetent in compliance with the Local Rules. *See* Support Aff. Ex. 1 ¶ 11; Ex. 5; *see also* Local Civ. R. 55.2(A)(1).

Dkt. Nos. 27, 29. After the Court granted counsel's motion to withdraw and gave Lemus leave to proceed *pro se*, Lemus stopped participating in this case. *See* Dkt. No. 30; Order dated Sep. 18, 2025. And, of course, Defendant International Drywall has never appeared or participated in this action in any way. Parties with a similar history of ignoring court orders and discovery obligations have been found to sufficiently demonstrate a pattern of noncompliance weighing in favor of granting default judgment. *See Chopen v. Olive Vine, Inc.*, 12-CV-2269, 2014 WL 198814, at *3 (E.D.N.Y. Jan. 15, 2014) (striking answer and entering default judgment when defendant repeatedly failed to appear at scheduled discovery conferences and comply with discovery requests). Therefore, Defendants' years-long history of noncompliance weighs in favor of finding default judgment appropriate here.

**B. Warnings to the Non-Compliant Party**

As to the second factor, Defendants were warned repeatedly throughout this litigation that they must participate or potentially face the entry of a default judgment. The Court issued at least eight separate orders over the course of this action warning Defendants of the consequences of failing to participate in this litigation. First, Defendants were warned about the importance of attendance and the consequences of non-appearances in the Court's May 18, 2023 order. Order dated May 18, 2023. After Lemus' counsel withdrew in November 2024, the Court again reminded Defendants that they must participate in this case and comply with their discovery obligations or risk the entry of a default judgment. Order dated Nov. 20, 2024. In the Court's December 18, 2024, January 2, 2025, January 7, 2025 orders, the Court again warned Defendants that continued failures to appear at court conferences or comply with court orders could result in the Court striking Lemus' Answer and that "any default judgment may require Mr. Lemus and/or other Defendants to pay Plaintiffs thousands of dollars." Order dated Dec. 18, 2024; Order dated Jan. 2, 2025; Order

dated Jan. 7, 2025. After Plaintiffs filed their motion to strike, the Court warned in its August 18, 2025, September 12, 2025, and September 18, 2025 orders that Defendants must participate in this case or risk waiving factual and legal defenses. Order dated Aug. 18, 2025; Order dated Sep. 12, 2025; Order dated Sep. 18, 2025.

In other cases, similar warnings were sufficient to demonstrate Defendants had ample warning about the potential for default judgment. *See, e.g.*, *Silverman & Silverman, LLP v. Pacifica Found.*, 11-CV-1894, 2014 WL 3724801, at *4 (E.D.N.Y. July 25, 2014) (highlighting multiple warnings about potential sanctions as justification for entering default judgment in contract dispute); *Gomez v. El Rancho De Andres Carne De Tres Inc.*, 12-CV-1264, 2013 WL 2395978, at *3 (E.D.N.Y. May 31, 2013) (granting default judgment because the defendants failed to appear despite court warnings). As such, this factor weighs in favor of finding default appropriate.

**C. Willfulness of Conduct**

Defendants' pattern of non-compliance suggests that their continuing disregard of court orders is willful. Despite numerous warnings from the Court, Lemus ignored Plaintiffs' discovery requests and fully ceased participating in this case, becoming unresponsive to Plaintiffs, the Court, and his own counsel. When striking Lemus' Answer, the Court found such non-compliance was willful. *See* Order dated Sep. 18, 2025 ("Rather than responding to the Court's prior warnings by resuming participation in this matter or providing any explanation for his failure to participate, Defendant has not communicated with Plaintiff or the Court at all in this time. The Court thus finds that Defendant's refusal to comply with this Court's orders and participate in the action is willful."). Further, Lemus has continued not to participate in this case in any way since the Court struck Lemus' answer, while Defendant International Drywall never appeared at all. Consistent

with the Court's prior finding of willfulness, the undersigned finds Defendants' continued non-compliance after repeated warnings is willful and weighs in favor of finding default judgment appropriate. *See, e.g.*, *Castillo v. Zishan, Inc.*, 16-CV-6166, 2017 WL 3242322, at *2 (S.D.N.Y. July 28, 2017) (finding *pro se* litigant's failure to appear or respond to motions was willful); *Elsevier,* 97 F. Supp. 3d at 38–39 (willfulness established where defendants "[did] not compl[y] with their discovery obligations" and "disobeyed court orders").

**D. Effectiveness of Lesser Sanctions**

The undersigned next addresses the efficacy of lesser sanctions. While Defendant Lemus appeared and participated in this case for some time, he eventually became nonresponsive even toward his attorney, such that his counsel was forced to withdraw in November 2024. Afterward, Lemus continued to be nonresponsive to Plaintiffs' counsel and the Court. *See* Dkt. No. 27. When, as here, a defendant stops participating entirely for a prolonged period despite multiple warnings and attempts to get him to resume participation, no lesser sanction will be effective even when there was initially some limited participation. *See, e.g.*, *Rob v. Von Horn*, 808 F. Supp. 3d 505, 512, 532 (E.D.N.Y. 2025) (dismissing defendant's counterclaims and granting default judgment after finding, *inter alia*, "[defendant's] lack of interest in this case, as evidenced by over 10 months of unresponsiveness, shows that a lesser sanction, such as a fine, would likely have no effect" ); *Chopen*, 2014 WL 198814, at *3 (finding default judgment appropriate because lesser sanctions would be ineffective where defendants stopped participating). The undersigned thus finds that Defendants' continued non-participation despite numerous warnings means no lesser sanction will be effective in ensuring Defendants' compliance. This factor accordingly weighs in favor of granting a default judgment.

**E. Client's Complicity**

The undersigned next considers the client's complicity in the default. Negligent actions by counsel may weigh in favor of finding the client non-complicit. *See Am. Cash Card Corp.*, 184 F.R.D. at 524–525. However, in this matter, Defendants' noncompliance is attributable entirely to the client, not any actions by counsel. Lemus' prior counsel, to the contrary, alerted the Court that Lemus was regularly missing scheduled meetings and failing to communicate with counsel. Dkt. Nos. 27, 29. The Court then permitted counsel to withdraw because Lemus made it impossible for counsel to adequately represent him. Dkt. Nos. 29–30. After counsel withdrew, Lemus was made aware of his responsibility to appear as a *pro se* litigant. Yet he never obtained new counsel, stopped complying with his discovery obligations and, critically, failed to respond to all of the Court's orders. *Id.* Lemus' complicity thus weighs in favor of finding default appropriate.

**F. Prejudice to the Moving Party.**

Finally, the undersigned addresses the prejudice to the moving party if the Court were to decline to grant default judgment. In the nearly four years since this case was filed, Plaintiffs have continually abided by court orders, participated in mediation, served discovery requests, and engaged in exhaustive efforts to contact and seek relief from Defendants. *See* Dkt. No. 35; Order dated Sep. 18, 2025. If the Court were to deny Plaintiffs' motion, Plaintiffs would be severely prejudiced "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines*, *LLC*, 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008); *see also Tula v. Elite Auto Maintenance Inc. et al.*, 25-CV-3117, 2026 WL 2234347, at *4 (E.D.N.Y. Aug. 3, 2026) (noting "Plaintiff's ability to obtain relief under the FLSA or NYLL flows from this proceeding, and Defendant[s'] nonparticipation, if tolerated, would be dispositive in

preventing Plaintiff from obtaining relief."); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, 14-CV-0946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (establishing the prejudice element because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

Thus, despite Lemus' initial appearance and participation in this matter, the undersigned finds that all factors weigh in favor of finding default judgment appropriate.

## II. Liability Under the FLSA and NYLL

After establishing that default judgment is appropriate, the undersigned next considers whether the allegations in the Complaint and supporting materials, deemed admitted, are sufficient to establish liability. To establish liability under the FLSA, Plaintiffs must first demonstrate that "(1) the defendant is an employer subject to the FLSA; (2) the Plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Ochoa v. 5 Square Mgmt. LLC*, 24-CV-7300, 2026 WL 796866, at *5 (E.D.N.Y. Mar. 23, 2026) (citing 29 U.S.C. § 206(b)); *see also Soto v. Los Corbaticas Deli Grocery II Corp*., 18-CV-3602, 2018 WL 4844018, at *3 (S.D.N.Y. Oct. 5, 2018) (applying same test to NYLL claim), *report and recommendation adopted,* 2018 WL 6173713 (S.D.N.Y. Nov. 23, 2018). Analysis of the employer-employee relationship is "nearly identical" under the NYLL as the FLSA. *See Jimenez.*, 744 F. Supp. 3d at 247 (finding an employer relationship under the FLSA also establishes one under the NYLL). The undersigned addresses each threshold requirement, as well as whether Plaintiffs may hold Defendants jointly and severally liable.

### A. Employer Subject to the FLSA and NYLL

Plaintiffs must first demonstrate the existence of an employer-employee relationship within the meaning of the FLSA and NYLL. *See* 29 U.S.C. § 203; *see also Soto*, 2018 WL 4844018, at

*3; *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). An "employer" under the FLSA includes "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee." *Ochoa*, 2026 WL 79686, at *5 (quoting 29 U.S.C. §§ 206(a), 207(a)). The two methods of establishing whether an employer is covered under the FLSA are "commonly referred to as 'individual' and 'enterprise' coverage." *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009).

*i. Corporate Defendant International Drywall*

The enterprise coverage test requires Plaintiffs to demonstrate the corporate defendant is "engaged in commerce or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce." *Ochoa*, 2026 WL 79686, at *5 (quoting 29 U.S.C. § 203(s)(1)). To establish that a defendant qualifies as an enterprise engaged in commerce, "the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) 'employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person.'" *Brito v. Marina's Bakery Corp.*, 19-CV-00828, 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) (quoting 29 U.S.C. §§ 203(s)(1)(A)(i)–(ii)).

Here, Plaintiffs demonstrate that International Drywall qualifies as an enterprise engaged in commerce. Plaintiffs allege that International Drywall possesses "annual gross sales volume of at least $500,000[,]" Compl. ¶ 25, and "purchased all materials, goods, supplies and products through channels of interstate commerce, from suppliers and other sources that are located outside the State of New York." Support Aff., Exs. 10–15 ¶ 6. While somewhat conclusory, "courts in this Circuit have inferred enterprise coverage from the nature of the employer's business where the work necessarily involves handling materials that have moved in interstate commerce." *Rueda*

*v. A & G Iron Works Corp*, 25-CV-1791, 2026 WL 183692, at *7 (E.D.N.Y. Jan. 23, 2026). Plaintiffs have thus cleared the low hurdle to demonstrate the existence of enterprise coverage under the FLSA. *See e.g.*, *Tula*, 2026 WL 2234347, at *5 ("While these allegations assert a conclusion without providing reasoning as to how Defendant[s] engaged in commerce or what goods were produced, virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (internal quotations and citation omitted). Additionally, the undersigned may reasonably infer a construction business like that of Defendant International Drywall is engaging in interstate commerce. *See*, *e.g.*, *Castro v. Hyper Structure Corp.*, 21-CV-1391, 2022 WL 2467242, at *8 (E.D.N.Y. Mar. 7, 2022) (collecting cases).

Accordingly, Plaintiffs have sufficiently alleged that International Drywall is an "enterprise engaged in commerce." 29 U.S.C. § 203(s)(1).

*ii. Individual Defendant Lemus*

With respect to Individual Defendant Lemus, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees." *Ochoa*, 2026 WL 79686, at *5. Courts in this Circuit use the "economic reality" test to determine whether an employee-employer relationship exists. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). The factors of the economic reality test are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 67 (2d Cir. 2003) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). No one factor is dispositive; rather the ultimate inquiry is whether "the alleged employer possessed the power to control the workers

in question." *Ruixuan Cui v. E. Palace One, Inc.*, 17-CV-6713, 2019 WL 4573226, at *6 (S.D.N.Y. Sep. 20, 2019) (quoting *Herman*, 172 F.3d at 139).

Here, Plaintiffs sufficiently establish the existence of an employee-employer relationship. First, Plaintiffs allege Lemus hired them to work for International Drywall and had exclusive power over personnel decisions. Support Aff., Exs. 10–15. ¶¶ 3–4. Plaintiffs allege that Lemus, as the day-to-day operator of International Drywall, established their wages, while being individually responsible for maintaining employment records. Compl. ¶¶ 21–23; Support Aff., Exs. 10–15. ¶ 4. Plaintiffs further allege that Lemus acted as Plaintiffs' "direct supervisor," as he assigned Plaintiffs with daily tasks, set their work schedules, and handed Plaintiffs their wages in cash. Support Aff., Exs. 10–15. ¶¶ 4, 13. Courts have found similar supervisory control over schedules, wages, and employee records to constitute an employer-employee relationship. *See, e.g.*, *Tzilin v. Jimmy G Constr. Corp.*, 23-CV-4047, 2024 WL 4309775, at *7 (E.D.N.Y. Sep. 26, 2024) (finding employer-employee relationship where construction company operator controlled hiring, payroll, and other personnel decisions); *Cooper v. Fire & Ice Trucking, Corp.*, 23-CV-1675, 2024 WL 3344001, at *7 (E.D.N.Y. July 9, 2024) (finding employer-employee relationship where manager controlled employees' schedules, determined their rate of pay, and had power to hire and fire employees). Plaintiffs' Complaint and supporting materials therefore establish that Lemus was Plaintiffs' employer within the meaning of both FLSA and NYLL.

**B. Employee Subject to the FLSA and NYLL**

The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements, such as employees whose duties fall within "executive, administrative, or professional" capacities or seasonal workers. *See Ochoa*, 2026 WL 79686, at *5 (quoting 29 U.S.C. § 213(a)(1) (listing multiple exemptions)). Here, the undersigned finds Plaintiffs' work as

drywall and sheetrock installers does not fall within these exemptions, and Plaintiffs are therefore employees within the meaning of the FLSA. *See, e.g.*, *Romero v. Floris Constr., Inc.*, 16-CV-04282, 2017 WL 5592681, at *5 (E.D.N.Y. Nov. 20, 2017) ("Construction workers are non-exempt employees under the FLSA.").

**C. Joint and Several Liability**

Plaintiffs seek to hold Defendants "jointly and severally" liable for FLSA and NYLL violations. Compl. ¶¶ 85, 89. Plaintiffs allege Lemus is (1) the owner of International Drywall, (2) an authorized agent of Drywall International, and (3) had the power over all personnel decisions, including payment and hiring. Compl. ¶¶ 16–17, 22. These allegations are sufficient to establish a joint and several liability. *See, e.g.*, *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 235 (E.D.N.Y. 2024) (finding allegations that individual defendant was "sole day-to-day operator" and authorized agent with authority to control terms and conditions of employment and pay sufficient to hold that defendant jointly and severally liable with corporate employer for wage law violations) (collecting cases); *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (finding allegations that individual defendant "was an owner, partner, or manager" sufficient to impose joint and several liability with corporate employer for wage law violations); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 128–29 (E.D.N.Y. 2011) (finding allegations that manager had authority over personnel hiring adequate to impose joint and several liability with the corporate employer) (collecting cases). Thus, the undersigned recommends that Plaintiffs may hold Defendants jointly and severally liable.

**D. Overtime Pay Violations Under the FLSA and NYLL**

Next, the undersigned addresses Plaintiffs' claims for overtime pay violations under the FLSA and NYLL. Under the FLSA, "employers are not permitted to 'employ any . . . employees

. . . for a workweek longer than forty hours unless such employee receives compensation for his [or her] employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he [or she] is employed.'" *Dejesus v. HF Management Services, LLC*, 726 F.3d 85, 86 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). In other words, to bring a claim for overtime violations, Plaintiffs must allege they worked in excess of 40 hours a week without proper overtime compensation. *See id.* The NYLL has the same requirements. *See Ochoa*, 2026 WL 79686, at *5 ("The NYLL incorporates the FLSA's definition of overtime pay requirements."); *see also* N.Y. Lab. Law § 663; 12 N.Y.C.R.R. § 142–2.2.

Here, Plaintiffs allege they regularly worked six days per week during their employment, with shifts each workday from approximately 7:00 a.m. to 3:30 p.m. Compl. ¶¶ 27–28; Support Aff., Exs. 10–15 ¶ 9. This amounts to approximately 51 hours or more each week—over the 40 hours required to assert an overtime claim. Compl. ¶ 29; Support Aff., Exs. 10–15 ¶ 10. Plaintiffs allege they were paid by Defendants a flat daily rate of either $180.00 or $200.00 per day without regard to the number of hours worked during their employment. Compl ¶ 30; Support Aff., Exs. 10–15 ¶ 11.

"If the defendant has defaulted, [] the court may presume that the plaintiff's recollection and estimates of the hours he worked are accurate." *Jimenez*, 744 F. Supp. 3d at 249. Accordingly, Plaintiffs' recollection of hours worked and wages earned is sufficient to establish that Defendants are liable for overtime violations. *See e.g.*, *Martinez v. Golden Flow Dairy Farms Inc.*, 21-CV-2421, 2025 WL 3769328, at *7 (E.D.N.Y. Dec. 31, 2025) (finding allegations of overtime wage violations under the FLSA and NYLL sufficient when plaintiffs were paid flat rate of $480 each week despite regularly working 72 hours per week); *Jimenez*, 744 F. Supp. 3d at 249 (finding allegations of overtime wage violations sufficient under the FLSA and NYLL when plaintiffs were

paid flat rate of $800 each week regardless of hours worked). The undersigned thus respectfully recommends Defendants be held liable for failure to pay overtime wages under the FLSA and NYLL.

**E. Written Notice and Wage Statement Violations Under the NYLL**

Next, the undersigned evaluates whether Defendants can be held liable for wage notice violations under the NYLL. Under New York's Wage Theft Prevention Act, employers must provide written notice of pay rates at the time of hiring and provide a written statement with payment information at each paycheck. NYLL §§ 195(1), (3).

In any federal lawsuit, Plaintiffs must first establish Article III standing of an injury by demonstrating a "personal stake" in the case. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The Second Circuit recently clarified that Article III standing can only be established for lack of wage notices under the NYLL where a plaintiff "show[s] some causal connection between the lack of accurate notices and the downstream harm." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308, 311 (2d Cir. 2024).

Here, Plaintiffs allege they never received any paystubs, wage notices, or wage statements from Lemus at any point during their employment with Defendants. Pls.' Mem., p. 8; Support Aff., Exs. 10–15 ¶¶ 11, 14. Plaintiffs argue that this lack of documentation meant each of them were unable to identify their regular hours, overtime hours, and rates of pay, resulting in their "inability to ascertain if [they were] being paid properly for all [] hours worked." Support Aff., Exs. 10–15.

In *Guthrie*, the Second Circuit held that, while the legislature may have intended the law to help "empower employees" to advocate for their wages, "unless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some

actual harm or obtained some actual benefit if accurate notices had been provided" a plaintiff cannot establish a concrete injury-in-fact "sufficient to confer standing to seek statutory damages under § 195." *Guthrie*, 113 F.4th at 308. In other words, "confusion and uncertainty about" compensation, like that alleged by Plaintiffs here, are "hypothetical, speculative concern[s] . . . insufficient to establish standing in a suit for damages" under the NYLL. *Brathwaite v. Martini Collections Inc.*, 22-CV-4929, 2025 WL 99108, at *7 (S.D.N.Y. Jan. 14, 2025) (internal quotations and citations omitted), *report and recommendation adopted*, 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025).

Further, since *Guthrie*, courts in this Circuit have repeatedly found that hypothetical concerns like the injuries Plaintiffs allege are insufficient to reach the standard for a particularized, concrete injury required to establish standing for lack of wage notices under the NYLL. *See, e.g., Tula*, 2026 WL 2234347, at *8 (applying *Guthrie* and finding no concrete injury where Plaintiff "does nothing more than allege that the wage notice provision was violated"); *Vazquez Romero v. La Morenita Fruit Mkt.t Corp*., 23-CV-6300, 2026 WL 687228, at *8 n.3 (E.D.N.Y. Mar. 11, 2026) (applying *Guthrie* and failing to find concrete injury based on lack of posting and notices alone); *Yagui v. Republic Bar & Lounge Inc.*, 25-CV-2674, 2026 WL 1296762, at *13 (E.D.N.Y. May 12, 2026) (relying on *Guthrie* to deny wage notice damages because there was no concrete injury causally linked to the missing statements); *Brathwaite*, 2025 WL 99108, at *7 (relying on *Guthrie* to find plaintiffs did not sufficiently allege a "concrete downstream consequence of the failure to receive payroll notices or wage statements" for court to have subject matter jurisdiction over their claims).

In a recent decision in this district, the court found concrete downstream injury where the plaintiffs alleged that the lack of wage notices prevented the plaintiffs from "verify[ing] whether

he was being properly compensated for his work" and proper notices would have allowed him to "identif[y] the underpayments and rais[e] complaints earlier" which "delayed Plaintiff from asserting his rights and necessitated the initiation of this litigation" and that he "would have complained sooner" if he knew. *Rueda*, 2026 WL 183692, at **12–13 (internal quotation marks omitted). In *Rueda*, the "downstream consequence" was "not that the Plaintiff was unaware that he was not being paid properly" but rather that these effects "prevented him from detect[ing] or challeng[ing] Defendants' concealment of wage violations" and "pursuing remedial actions with the Defendants sooner." *Id.* at *13. Here, Plaintiffs similarly allege that they were "unable to identify [their] regular hours, overtime hours, terms, rates of pay, and deduction which resulted in [their] inability to ascertain if [they were] being paid properly for all [their] hours worked." Support Aff, Exs. 10–15, ¶ 14; *see also* Compl. ¶¶ 91, 94. But, unlike the plaintiffs in *Rueda*, this did not interfere with Plaintiffs' ability to raise concerns about their pay. Here, Plaintiffs allege that they "often" complained to Defendants regarding the lack of wage notices and overtime pay. Pls.' Mem., p. 8. Thus, the Plaintiffs here cannot establish a downstream consequence based on an inability to address their wage issues. Instead, as in *Tula* and *Yagui*, Plaintiffs' conclusory allegations are insufficient to meet their burden to establish standing through a downstream harm caused by the lack of notice. *See Tula*, 2026 WL 2234347, at *8; *Yagui*, 2026 WL 1296762, at *13. Therefore, the undersigned recommends that Plaintiffs' motion for a default judgment as to their notice and wage statement claims be denied.

## III. Damages

As explained above, the undersigned recommends that Plaintiffs be granted a default judgment as to their claims for overtime violations, but not for their wage notice violation claims. The undersigned next assesses Plaintiffs' claims for damages stemming from the overtime

violation claims.

Although Plaintiffs bring claims under both the FLSA and NYLL, it is settled law that while "a plaintiff may be entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL" the plaintiff "may not recover twice." *Caputi-Richards v. Chuck's Vintage, Inc.*, 22-CV-6409, 2023 WL 2877622, at *2 (S.D.N.Y. Apr. 11, 2023), *report and recommendation adopted*, 2023 WL 3174316 (S.D.N.Y. May 1, 2023) (quoting *Ergin v. 8th Hill Inc.*, 20-CV-4594, 2022 WL 1037655, at *3 (S.D.N.Y. Apr. 6, 2022)). As such, courts generally apply the higher-paying option when analyzing damages under the two laws. *See id*. As the NYLL generally has a higher overtime paying option, the undersigned applies the NYLL. *See id.; see also Paulino v. S & P Mini Mkt. Corp.*, 791 F. Supp. 3d 457, 464 (S.D.N.Y. 2025) (discussing only the greater NYLL damages and not addressing FLSA damages).

**A. Unpaid Overtime Wages**

As established above, Plaintiffs sufficiently allege overtime violations under the FLSA and NYLL. Compl. ¶¶ 85, 88. Plaintiffs request $2,423.70 in overtime wages. Pls.' Mem., pp. 17–18.

"[U]nder the FLSA and NYLL, Plaintiff is entitled to overtime compensation of at least one and one-half times his regular hourly rate for hours worked over 40 per week." *Ochoa*, 2026 WL 796866, at *11. As Plaintiffs were paid a daily flat rate rather than an hourly wage, their regular rate is to be determined by multiplying their daily wage rate by the number of workdays per week, divided by the total hours per week. 12 N.Y.C.R.R. § 142-3.5(b).

Plaintiffs allege they received wages at a flat rate of either $180 or $200 per day. Compl. ¶¶ 30, 36. Plaintiffs regularly worked six days per week during their employment, working from 7:00 a.m. to 3:30 p.m., amounting to approximately 51 hours per week. *Id.* ¶¶ 27–29. Thus,

Plaintiffs were receiving an hourly rate of approximately $21.18 (($180 multiplied by 6 days) divided by 51 hours per week) or $23.53 (($200 multiplied by 6 days) divided by 51 hours). Next, the period of the missing overtime occurred from December 14, 2022, to January 6, 2022, for a total of approximately 3.29 weeks (23 days divided by 7 days). Support Aff., Exs. 10–15 ¶ 3, 17. Since Plaintiffs were working approximately 51 hours per week, they worked 11 hours of overtime each week. Compl. ¶ 29. Therefore, Plaintiffs worked a total of approximately 36.14 hours without overtime pay (3.29 weeks multiplied by 11 hours).

After determining the amount of time Plaintiffs were without overtime pay, "'the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate ([regular] wage multiplied by 1.5) by the total number of overtime hours worked per week and multiplying that product by the number of weeks during the relevant period." *Ochoa*, 2026 WL 796866, at *12 (quoting *Sanchez v. Ms. Wine Shop*, 643 F. Supp. 3d 355, 377 (E.D.N.Y. 2022)). Here, the difference between the paid rate ($23.53 or $21.18) and the overtime rate ($35.29 or $31.77) for each Plaintiff amounts to $11.76 or $10.59. That difference, multiplied by the number of unpaid overtime hours (11 hours), multiplied by the number of weeks during the relevant period (3.29 weeks), amounts to a total of $425.21 ($10.59 multiplied by 11 hours multiplied by 3.29 weeks) or $382.69 ($11.76 multiplied by 11 hours multiplied by 3.29 weeks).

Following these steps, the undersigned reached the same final calculations as the Plaintiffs. Support Aff., Ex. 16, pp. 3–8. *See* table below for the calculations broken down by each Plaintiff.

*Table 1: Unpaid Overtime Wages Owed to Each Plaintiff.*

| **Plaintiff** | **Hr. Rate** | **OT Rate (1.5 Rate)** | **Diff. Between OT Wage & Pay (.5 Rate)** | **Hours Worked OT** | **Unpaid OT Wage** |
|---|---|---|---|---|---|
| David Matias Lopez | $23.53 | $35.29 | $11.76 | 36.14 hrs. | $425.21 |

| | | | | | |
|---|---|---|---|---|---|
| Mynor Ismael Tomas Perez | $21.18 | $31.77 | $10.59 | 36.14 hrs. | $382.69 |
| Noe Arnoldo Lopez Miranda | $21.18 | $31.77 | $10.59 | 36.14 hrs. | $382.69 |
| Camelio Jeremias Matias Lopez | $23.53 | $35.29 | $11.76 | 36.14 hrs. | $425.21 |
| Elmar Alejandro Matias Lopez | $23.53 | $35.29 | $11.76 | 36.14 hrs. | $425.21 |
| Melvin Josieas Tema Tema | $21.18 | $31.77 | $10.59 | 36.14 hrs. | $382.69 |
| | **TOTAL SUM** | | | | **$2,423.70** |

Accordingly, the undersigned recommends that Plaintiffs receive a total of **$2,423.70** in damages for unpaid overtime wages.

**B. Liquidated Damages**

Plaintiffs seek $2,423.70 in liquidated damages. Compl. ¶ 3; Support Aff., Ex. 16, p. 2. Under the NYLL, liquidated damages are owed unless the employer "proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y.L.L. § 198(1-a); *see also Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020). "[T]he amount of liquidated damages is equal to 100% of the amount owed to the Plaintiffs in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours." *Villanueva*, 500 F. Supp. 3d at 239. While Plaintiffs can also recover liquidated damages under the FLSA, the Second Circuit "interpret[s] the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct[,]" and "[d]ouble recovery is generally disfavored." *Ochoa*, 2026 WL 796866, at *13 (quoting *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)). Courts thus award damages under "whichever statute allows for greater recovery." *Ochoa*, 2026 WL 796866, at *13.

Here, Plaintiffs have not shown a "good faith basis" or "compliance with the law" because of the circumstances described earlier resulting in this default and, thus, the undersigned must

consider Plaintiffs' allegations to be true and draw all inferences in their favor. These circumstances are sufficient to allow the Court to grant liquidated damages equal to the missing overtime pay, as calculated above pursuant to the NYLL. *See, e.g.*, *Chen v. Oceania Chinese Rest. Inc.*, 13-CV-4623, 2023 WL 2583856, at *16 (E.D.N.Y. Mar. 21, 2023) (granting liquidated damages in FLSA/NYLL case in light of defendants' default); *Santillan v. Henao*, 822 F. Supp. 2d 284, 297 (E.D.N.Y. 2011) (same).

Accordingly, the undersigned recommends Plaintiffs be awarded **$2,423.70** in liquidated damages equaling 100% of the total amount of the overtime wages owed.

**C. Pre-judgment Interest**

Plaintiffs seek pre-judgment interest pursuant to the NYLL at a daily rate of $0.31. Pls.' Mem., pp. 21–22; Support Aff., Ex. 16.

The NYLL allows Plaintiffs to recover pre-judgment interest for unpaid overtime. NYLL § 198(1-a); *see also Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020) ("Under Section 198(1-a) of the NYLL, plaintiffs who prevail on NYLL wage claims are entitled to prejudgment interest on their "underpayment[s]."). The applicable interest rate in New York state is 9% per annum. *See id.*; see also N.Y.C.P.L.R. § 5004(a). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). However, "[m]ost courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos v. Quentin Mkt.*, 16-CV-5303, 2018 WL 9945754, at *8 (E.D.N.Y. Oct. 17, 2018) (citing *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015)).

Here, the overtime violations occurred from December 14, 2021, until January 6, 2022, so

Plaintiffs calculate an appropriate midpoint date as December 25, 2021. Support Aff., Exs. 10–15 ¶ 3, 17. Plaintiffs' total overtime damages from the midpoint date is $1,264.54, which can be used to find a daily interest rate of $0.31 ($1,264.53 multiplied by .09/365 days). Support Aff., Ex. 16. The Court's calculation aligns with the amount requested by Plaintiffs. Accordingly, the undersigned respectfully recommend that Plaintiffs recover pre-judgment interest at a daily rate of **$0.31** from December 25, 2021, through the entry of judgment.

**D. Post-Judgment Interest**

An award of post-judgment interest at the statutorily prescribed rate is mandatory. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008); 28 U.S.C. § 1961(a) (post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment"). Therefore, the undersigned recommends that Plaintiffs recover post-judgment interest at the federal rate set forth in 28 U.S.C. § 1961(a), calculated from the date the Clerk of Court enters judgment until the date of payment. *See, e.g.*, *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 53 (E.D.N.Y. 2015).

**E. Fifteen Percent Increase Penalty if Damages Not Paid within Ninety Days**

Plaintiffs seek an automatic increase of 15% for any unpaid amount of the judgment still pending after 90 days, as permitted under the NYLL. *See* Pls.' Mem., p. 23; *see also* NYLL §198(4). However, this increase under the NYLL is inapplicable because state law regulations do not control once a federal judgment is entered. *See Chen v. Asian Terrace Rest., Inc.*, 602 F. Supp. 3d 348, 350 (E.D.N.Y. 2022) ("§ 1961 supplants any state law provisions that would otherwise increase the amount of a federal judgment."). Accordingly, the undersigned recommends

Plaintiffs' damages should not be increased by a rate of 15% even if not paid within the 90-day window.

**F. Attorneys' Fees**

Plaintiffs seek $28,445.00 in attorneys' fees. Support Aff., Ex. 16, p. 10. "The FLSA is a fee shifting statute and the Court "must" award a reasonable attorney's fee to a prevailing party in an FLSA action." *Diaz v. KC Plumbing, LLC*, 19-CV-4321, 2021 WL 7500316, at *12 (E.D.N.Y. Mar. 1, 2021) (internal quotations and citation omitted); *see also* 29 U.S.C. § 216(b). The NYLL similarly requires a prevailing employee in a wage claim to recover reasonable attorneys' fees. *See Diaz*, 2021 WL 7500316, at *12; N.Y. Lab. Law § 663(1).

In the Second Circuit, the traditional starting point for determining attorneys' fees is the lodestar method, which is the "product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar method results in a "presumptively reasonable" fee. *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 126 (E.D.N.Y. 2013) (collecting cases).

The fee applicant bears the burden of proving that the requested rates are similar with those in the community for comparable services by lawyers with similar experience, skill, and reputation. *See id.* at 127 (citing *Blum v. Stenson*, 465 U.S. 886, 896 (1984)). To meet this burden, Plaintiffs must provide the Court with supporting documents, including contemporaneous time records and affidavits. *See McDonald Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund,* 450 F.3d 91, 96 (2d Cir. 2006). "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Finkel v. Captre Elec. Supply Co.*, 14-CV-3584, 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (quotations and citation omitted).

*i. Reasonable Rates*

First, the undersigned assesses if the attorneys' requested rates are reasonable and consistent with the prevailing rates in the Eastern District of New York. *Finkel*, 970 F. Supp. 2d at 127–28 (citing *Simmons v. New York City Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009)). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Diaz v. Rene French Cleaners, Inc.*, 20-CV-3848, 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022) (quotations and citation omitted), *report and recommendation adopted*, 2022 WL 4662247, at *1 (E.D.N.Y. Sep. 30, 2022); *see also Shuford v. Cardoza*, 17-CV-6349, 2024 WL 865989, at *3 (E.D.N.Y. Feb. 28, 2024) ("Courts in this [D]istrict have generally awarded fees . . . at an hourly rate of $200 to $450 per hour for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates.") (citing *Crews v. County of Nassau*, 06-CV-2610, 2019 WL 6894469, at *7 (E.D.N.Y. Dec. 18, 2019)).

Courts also look to the total recovery as a guide when deciding whether to reduce a request for fees. In a recent FLSA case where attorneys from the same firm representing the Plaintiffs here managed to recover only a fraction of the requested damages, the Court found that "Plaintiff's limited degree of success supports an hourly rate at the low end of the typical range for employment law attorneys in this district," and correspondingly adjusted the attorneys' hourly rates to the lower end of the typical fee range. *Roma v. Carmili*, 23-CV-4072, 2026 WL 375823, at *3 (E.D.N.Y. Feb. 10, 2026) ("[H]ourly rate for Roman Avshalumov, Esq., a senior managing attorney with 15 years of experience, is reduced from $500 to $300. The hourly rate for James O'Donnell, Esq., a managing attorney with nine years of experience, is reduced from $400 to $300. The hourly rate for Katelyn Schillaci, Esq., a junior associate with two years of experience, is

reduced from $250 to $100. The hourly rate for Avraham Scher, Esq., a junior associate no longer employed at the firm representing Plaintiff, is reduced from $175 to $100 . . . . The hourly rate for paralegals is reduced from $100 to $70.") (internal citations omitted).

Here, Plaintiffs' counsel provides the necessary contemporaneous billing records detailing the attorney rates and time records. Support Aff., Ex. 16, pp. 10–12. The requested rates for Plaintiffs' counsel at Helen F. Dalton & Associates, P.C ("D&A") are $500 for the senior managing attorney, $400 for senior associate, $175–250 for junior associates, and $100 for paralegal services. Support Aff., Ex. 16, pp. 11–12. The undersigned find that these rates are all higher than the standard rates for a FLSA case when compared to similar cases in this district. *See, e.g.*, *Ochoa*, 2026 WL 79686, at *13; *In re Wang Litig.*, 20-CV-05410, 2026 WL 746922, at *4–5 (E.D.N.Y. Mar. 17, 2026); *Shen v. ZenTao Inc.*, 19-CV-7269, 2025 WL 746478, at *3 (E.D.N.Y. Feb. 18, 2025), *report and recommendation adopted,* 19-CV-7269, 2025 WL 746063 (E.D.N.Y. Mar. 7, 2025); *Rodriguez v. MRC Bakery Corp.*, 802 F. Supp. 3d 393, 432 (E.D.N.Y. 2025); *but see Rubin v. HSBC Bank USA*, 20-CV-04566, 763 F.Supp.3d 233, 243–244 (E.D.N.Y. 2025) (adjusting E.D.N.Y. attorneys' fees rates for inflation in a fair credit reporting act case and noting the Court's obligation to respond to market conditions). The undersigned also notes that Plaintiffs' attorneys in this case are recovering only a small percentage of requested damages sought here, much like where the Court limited the fee award in *Roma*. *See* damages *supra* III; *Roma*, 2026 WL 375823, at *3. Since "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained" this result further counsels awarded a lower amount than initially requested. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Therefore, the undersigned recommends that the higher requested rates should be adjusted to match the prevailing district rates.

Applying the prevailing attorney rates in this District, and considering Plaintiffs' limited success in this litigation, the undersigned recommends reducing the hourly rate of Roman Avshalumov ("RA") from $500 to $300, the hourly rate of James O'Donnell ("JO") from $400 to $300, the hourly rate for Katelyn Schillaci ("KS") from $250 to $100, the hourly rate for Avraham Scher ("AS") from $175 to $100, and the hourly rate for paralegals from $100 to $70.

*ii. Reasonable Hours*

The fee applicant must also demonstrate that the hours expended by the attorneys are reasonable. *See, e.g.*, *Schutter v. Tarena Int'l, Inc.*, 21-CV-3502, 2024 WL 4118465, at *15 (E.D.N.Y. Sep. 9, 2024). When determining reasonable hours the Court must "exclude excessive, redundant or otherwise unnecessary" hours. *Id.*; *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Here, Plaintiffs are requesting attorneys' fees for a total of 80.9 hours of work, consisting of: 40.5 hours by RA, 12.1 hours by JO, 1.8 hours by KS, 3.4 hours by AS, and 23.1 hours by paralegals. Support Aff., Exs. 16, p. 10. Plaintiffs submitted billing records showing the breakdown of work from February 2022 to December 2025. *See id*. The billing records include, as required, the name of the attorney or staff member, a description of the tasks performed, and the amount of time spent per task. *See id*.

The requested 80.9 billable hours is high compared to what courts find to be reasonable in wage and hour cases on default. *See e.g., Lata v. Live Constr. Corp*., 24-CV-5981, 2025 WL 2782336, at *19 (E.D.N.Y. Sep. 18, 2025) (finding 24.2 hours of attorney time and 12 hours of paralegal time to be reasonable in an FLSA and NYLL default judgment case), *report and recommendation adopted*, 2025 WL 2782495 (E.D.N.Y Sep. 30, 2025); *Jiaren Wei v. Lingtou Zhengs Corp.*, 13-CV-5164, 2015 WL 739943, at *16 (E.D.N.Y. Feb. 20, 2015) (finding 55 hours

of work to be the "high-end amount of hours spent" on a standard FLSA default judgment matter) (internal quotation marks omitted). However, in this case there is an unusual procedural posture resulting in almost four years of litigation prior to the entry of this default judgment. This included some discovery and a mediation session prior to Defendant Lemus abandoning his defense. Under similar circumstances where the defendants appeared and participated for some time prior to default, the court may consider a higher amount of hours spent on the case to be reasonable. *See, e.g.*, *Baltierra v. Advantage Pest Control Co.*, 14-CV-5917, 2015 WL 5474093, at *13 (S.D.N.Y. Sep. 18, 2015) (approving a total of 108.2 billable hours for an FLSA default judgment case with multiple plaintiffs and an initial answer); *Castillo v. Zishan, Inc.*, 2018 WL 2084142, at *7 (S.D.N.Y. Apr. 6, 2018) (finding 49.4 hours reasonable in an FLSA case where the defendants' answer was stricken from the record after a history of non-compliance), *report and recommendation adopted*, 2018 WL 2081853 (S.D.N.Y. May 2, 2018).

After carefully reviewing the billing records and considering the procedural history, the undersigned finds that 80.9 hours of billable hours reasonable for this case. The undersigned recommends, given the existence of multiple Plaintiffs, the prior attempt at meditation, and the need for Plaintiffs to file a motion to strike Lemus' answer prior to bringing this motion, that the Court award the requested number of hours. *See* Support Aff., Ex. 16, p. 10.; Dkt. No. 35. Therefore, based on the adjusted hourly rates, and the hours billed, the undersigned respectfully recommends Plaintiffs' counsel be awarded **$17,917** in attorneys' fees as outlined in the table below:

*Table 2: Calculation of Attorneys' Fees*

| **Attorney** | **Billing Rate** | **Hours** | **Total** |
|---|---|---|---|
| Roman Avshalumov | $300 | 40.5 | $12,150 |
| James O'Donnell | $300 | 12.1 | $3,630 |
| Katelyn Schillaci | $100 | 1.8 | $180 |

| | | | |
|---|---|---|---|
| Avraham Scher | $100 | 3.4 | $340 |
| Paralegals | $70 | 23.1 | $1,617 |
| | | TOTAL: | **$17,917** |

**G. Costs**

Plaintiffs also request $1,164 in total costs, which includes the cost of the filing fee ($402), serving the Defendants ($397), mediating ($300), and ascertaining whether Lemus is in the military to comply with Local Rule requirements ($65). *See* Support Aff., Ex. 16, p. 10. Plaintiffs are entitled "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Fisher*, 948 F.3d at 600 (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). Reasonable costs include "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). The undersigned thus finds these requested costs to be reasonable and recommends awarding **$1,164** in costs.

**CONCLUSION**

The undersigned respectfully recommends that the Court grant Plaintiffs' Motion for Default Judgment as to overtime wage claims, but deny the Motion as to the written notice and wage statement claims under the NYLL. The undersigned recommends awarding Plaintiffs the following relief, totaling **$23,928.40,** plus any pre-judgment or post-judgment interest.

(1) **$2,423.70** in overtime pay damages;

(2) **$2,423.70** in liquidated damages;

(3) **$17, 917** in attorneys' fees;

(4) **$1,164** in costs;

(5) Pre-judgment judgment interest at a daily rate of **$0.31**;

(6) Post-judgment interest at the federal rate up until the date of judgment.

**OBJECTIONS**

Plaintiffs' counsel is directed to serve Defendants with a copy of this Report and Recommendation and file proof of service on the docket on or before August 10, 2026. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). If any party fails to file timely objections to this Report and Recommendation, it will waive any right to further judicial review of the decision. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Kotlyarsky v. United States Dep't of Just.*, 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *Small v. Sec'y of HHS*, 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

Dated: Brooklyn, New York
July 31, 2026

/S/ *SETH D. EICHENHOLTZ*
SETH D. EICHENHOLTZ
United States Magistrate Judge
Eastern District of New York